UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MEHDI ESMAEILI GOLLOO,

                                    Petitioner,

   vs.                                                    9:26-CV-401
                                                           (MAD)

FREDERICK J. AKSHAR II, *in his official
capacity as Sheriff, Broome County Correctional
Facility*; PHILIP L. RHONEY, *in his Official
Capacity as Acting Field Office Director, Buffalo
Ice Field Office*; MARKWAYNE MULLIN, *in his
Official Capacity as Secretary of Homeland Security*;
TODD M. LYONS, *in his official capacity as Acting
Director, Immigration and Customs Enforcement*;
and TODD BLANCHE, *in his official capacity as
Acting Attorney General, U.S. Department of Justice*,

                                    Respondents.

---

APPEARANCES:                              OF COUNSEL:

ECBA VOLUNTEER LAWYERS PROJECT            AARON J. AISEN, ESQ.
45 Ellicott Street, Suite 1              DAVID J. SLEIGHT, ESQ.
Batavia, New York 14020                  MICHAELA ANDRIATCH, ESQ.
Attorneys for Petitioner

OFFICE OF THE UNITED STATES              DAVID M. KATZ, AUSA
ATTORNEY
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Attorney for Respondents

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On March 16, 2026, Petitioner Mehdi Esmaeili Golloo filed a petition for writ of habeas corpus (the "Petition"), alleging that U.S. Immigration and Customs Enforcement ("ICE") has detained him for an unreasonably long period of time without due process. Dkt. No. 1. Respondents to the Petition are one Broome County, New York official—Sheriff Frederick J. Akshar II—and four federal officials—Acting Field Office Director, Buffalo ICE Filed Office, Phillip L. Rhoney, Department of Homeland Security ("DHS") Secretary Markwayne Mullin, Acting ICE Director Todd M. Lyons, and Acting U.S. Attorney General Todd Blanche. *Id.*[1] Petitioner also sought a temporary order barring Respondents from relocating him outside the Northern District of New York while his petition is pending, *see id.* at 9, which this Court granted, *see* Dkt. No. 2.

On March 16, 2026, this Court ordered Respondents to file a response and show cause as to why the petition should not be granted. *Id.* Respondents filed their response to the petition on March 30, 2026, *see* Dkt. No. 6, and Petitioner filed a reply on April 6, 2026, *see* Dkt. No. 7. The Court has determined that a show cause hearing is not necessary and will decide this matter on submissions without a hearing. *See Palma v. Arteta*, No. 25-CV-09340, 2026 WL 697015, *2 (S.D.N.Y. Mar. 12, 2026) ("[W]here, as here, 'the record and submissions are adequate to resolve Petitioner's claim,' 'there is no need for a full evidentiary hearing'") (quoting *Kaplan v. United States*, No. 14-CV-1440, 2015 WL 4111246, *3 (S.D.N.Y. June 25, 2015), and then citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)).

---

[1] Under Federal Rule of Civil Procedure 25(d), when an officer ceases to hold office while the action is pending, the officer's successor is automatically substituted as a respondent. Accordingly, Markwayne Mullin is hereby substituted for Respondent Kristi Noem. Attorney General Pamela Bondi's successor will be automatically substituted as a Respondent once a new Attorney Generally officially replaces her. At the present time, Acting Attorney General Todd Blanche is substituted for Respondent Pamela Bondi.

## II. BACKGROUND

Petitioner was detained on September 4, 2024, shortly after his unlawful entry into the United States, and has remained detained since. Dkt. No. 1 at ¶¶ 2, 5, 20; Dkt. No. 6-1 at ¶ 5. He is a citizen and national of Iran. Dkt. No. 1 at ¶ 1. On September 6, 2024, Petitioner received a Notice and Order of Expedited Removal, which commenced expedited removal proceedings under 8 U.S.C. § 1225(b)(1). *See id.* at ¶ 21; Dkt. No. 1-3 at 1.

Petitioner received a credible fear interview on October 24, 2024. *See* Dkt. No. 1 at ¶ 23. On October 25, 2024, removal proceedings were commenced by a Notice to Appear. *See id.* at ¶ 3. On May 13, 2025, an immigration judge found Petitioner removable, denied relief from removal, and issued an Order of Removal. *See id.* at ¶ 25; Dkt. No. 6-1 at ¶ 7. Petitioner appealed the Order of Removal to the Board of Immigration Appeals ("BIA") on June 9, 2025. *See* Dkt. No. 1 at ¶ 26. At this time, Petitioner remains detained pending appeal. *See id.* at ¶ 4; Dkt. No. 6-1 at ¶ 9.

Petitioner concedes that he is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). *See* Dkt. No. 1 at ¶¶ 7, 50. The Petition brings a single claim for relief, for violation of Petitioner's procedural due process rights under the Fifth Amendment to the United States Constitution. *See id.* at ¶¶ 49-54.

In response to the Petition, Respondents agree that Petitioner is detained pursuant to § 1225(b)(1)(B)(ii), and argue that, because his detention under the statute is mandatory, he is not entitled to a bond hearing during the pendency of his appeal to the BIA. *See* Dkt. No. 6 at 9-16. In his reply brief, Petitioner contends that his detention has been unreasonable prolonged, thereby giving rise to "some" due process rights under the Fifth Amendment. Dkt. No. 7 at 3-7.

## III. DISCUSSION

## A.    Legal Standard

A district court may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Veletanga v. Noem*, No. 25-CV-9211, 2025 WL 3751865, *2 (S.D.N.Y. Dec. 26, 2025) (quoting *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4)); *see also* 28 U.S.C. § 2241(c)(3); *see Padilla Molina v. DeLeon*, No. 25-CV-06526, 2025 WL 3718728, *2 (E.D.N.Y. Dec. 23, 2025) (citations omitted).  "This jurisdiction includes habeas petitions filed by immigration detainees[,]" *Padilla Molina*, 2025 WL 3718728, at *2 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)), including non-citizens, *see R.P.L. v. Maldonado*, 814 F. Supp. 3d 301, 304 (E.D.N.Y. 2025).

"[T]he petitioner 'bears the burden of proving that he is being held contrary to law[,] and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Veletanga*, 2025 WL 3751865, at *2 (quoting *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, *3 (S.D.N.Y. May 26, 2020)); *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## B.    Statutory Authority for Petitioner's Detainment—8 U.S.C. § 1225(b)(1)(B)(ii)

As discussed, the parties agree that the applicable statutory authority for Petitioner's detainment is § 1225(b)(1)(B)(ii) of the Immigration and Nationalization Act.  Respondents contend that because detention under § 1225(b)(1)(B)(ii) in mandatory, Petitioner is not entitled to a bond hearing pending.  *See* Dkt. No. 6 at 9-16.  Petitioner argues that, although he has no statutory right to a bond hearing, he is nonetheless entitled to a bond hearing because his detention has been unreasonably prolonged.  *See* Dkt. No. 7 at 3-7.

4

Section 1225(b)(1) applies to applicants for admission that are initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. *See* 8 U.S.C. § 1225(b)(1)(A)(i). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C.§ 1225(b)(1)(A)(i)). "But if a § 1225(b)(1) alien 'indicates either an intention to apply for asylum . . . or a fear of persecution,' then that alien is referred for an asylum interview." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

As the Supreme Court has explained, "[§] 1225(b)(1) aliens are detained for 'further consideration of the application for asylum[]' . . . . Once those proceedings end, detention under § 1225(b) must end as well." *Id.* at 297 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)). More specifically, the Supreme Court determined that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id.* at 302.

Courts from several circuits have considered whether a pending asylum appeal means the proceedings have not "ended" for purposes of § 1225(b), and have "concluded that detention remains mandatory throughout the appeal process." *Rashid v. Trump*, 807 F. Supp. 3d 349, 363 (D. Vt. 2025) (citing *Bermudez Paiz v. Decker*, No. 18-CV-4759, 2018 WL 6928794, *6 (S.D.N.Y. Dec. 27, 2018) (determining that a noncitizen, whose parole was revoked after he was charged with drug crimes and traffic infractions, and whose asylum appeal was pending, was

subject to detention under § 1225(b)(1)(B)(ii)); [2] *Leke v. Hott*, 521 F. Supp. 3d 597, 600-01 (E.D. Va. 2021) (determining that asylum proceedings for the petitioner, an "arriving alien" in federal custody, had not yet concluded because denial of his asylum application was on appeal at the Fourth Circuit); *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 923, 928-29 (W.D. Wash. 2020) (adopting report and recommendation that determined § 1225(b)(1) applied to a petitioner who absconded from parole, and that, although immigration officials had denied the petitioner's asylum application, his pending appeal in the Ninth Circuit meant the proceedings had not yet ended).

There is a lack of consensus among courts regarding whether a petitioner's earlier parole into the United States negates the Government's detention authority under § 1225(b)(1). *Compare Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) ("Although Petitioner here was paroled into the United States in 2000 and . . . has been continuously present in the United States since that date, the parties agree . . . that Petitioner remains 'at the threshold of initial entry' for immigration purposes"), *with Ivonin v. Rhoney*, No. 6:25-CV-06673, 2026 WL 199283, *4 (W.D.N.Y. Jan. 26, 2026) ("[W]here a petitioner's re-arrest was *not* a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226") (emphasis in original). However, here, Petitioner was never paroled into the United States—he has been detained continuously since the time he was apprehended.

---

[2]  The Court notes that Magistrate Judge Barbara Moses analyzed this issue in a report and recommendation submitted to District Judge Gregory Woods for review, but the habeas corpus petition was withdrawn and the case was closed before Judge Woods issued any subsequent decision.

An asylum officer considered Petitioner's asylum claim and determined that he had a credible fear of persecution if he were removed. *See* Dkt. No. 1 at ¶¶ 21-24. Because of his credible fear determination, 8 U.S.C. § 1225(b)(1)(B)(ii) unambiguously directed that Petitioner "shall be detained for further consideration of the application for asylum."

The government appears to have followed that procedure: an immigration officer initiated removal proceedings, the immigration judge ordered Petitioner removed, and Petitioner has appealed the removal order to the BIA. *See* Dkt. No. 1 at ¶¶ 21-26. These actions fully comport with the statutory requirements. Thus, as § 1225(b)(1) unambiguously requires that Petitioner remain in custody, if Petitioner is entitled to habeas corpus relief, it must be attributable to his wrongful detention under the Constitution and due process requirements, not pursuant to the INA.

**C.        Whether the Fifth Amendment Requires a Bond Hearing**

With the statutory authority for Petitioner's detention settled, the Court will turn to whether the Fifth Amendment is implicated by his continued detention.

Petitioner acknowledges that he has no statutory right a bond hearing, but argues that he is entitled to one because his detention has become unconstitutionally prolonged. *See* Dkt. No. 7 at 3-7. Petitioner asks this Court to extend the reasoning in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) to non-citizens detained pursuant to § 1225(b)(1), like himself. *See id.*

In *Black*, the Second Circuit considered the constitutionality of prolonged detention under 8 U.S.C. § 1226(c). That statute calls for the mandatory detention of noncitizens who have been convicted of or arrested for certain crimes pending the final resolution of their removal proceedings. *See Jennings*, 583 U.S. at 303 (holding that "§ 1226(c) makes clear that detention of [noncitizens] within its scope *must* continue 'pending a decision on whether the [noncitizen] is to be removed from the United States'") (quoting 8 U.S.C. § 1226(c)) (emphasis in original).

In *Black*, the Second Circuit analyzed, *inter alia*, two Supreme Court decisions, *Demore* and *Jennings*. *See Black*, 103 F.4th at 140-42. In *Demore*, "[t]he Supreme Court . . . held that detention under [§] 1226(c) without an *initial* bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" *Id.* at 141 (quoting *Demore v. Kim*, 538 U.S. 510, 531 (2003)). In *Jennings*, the Court held that, as a matter of statutory interpretation, the text of § 1226(c) and § 1225(b) do not require a bond hearing after some set amount of time and mandate detention through the end of removal proceedings. *See id.* (citing *Jennings*, 583 U.S. at 303). "Read together, then, *Demore* and *Jennings* instruct that (1) due process does not require an *initial* bond determination for those detained under [§] 1226(c), and (2) [§] 1226's text cannot be construed to require a bond hearing after any particular fixed period of detention." *Id.* at 142 (emphasis in original).

"Critically, however, *Demore* and *Jennings* le[ft] open the question whether prolonged detention under [§] 1226(c) without a bond hearing will *at some point* violate an individual detainee's due process rights[,]" and did not address "what procedures due process may require." *Id.* (emphasis in original). The Second Circuit went on to answer these questions, finding that due process "does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under [§] 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." *Id.* at 145. What *Black* did not address, though, is whether detention under § 1225(b) without a bond hearing will, at some point, violate due process. [3]

---

[3] As the Supreme Court observed in *Jennings*, "nothing in the statutory text [of § 1225(b)(1)] imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. This, of course, is statutory interpretation—whether the Constitution may eventually require a bond hearing was not answered by the Supreme Court in *Jennings* nor the Second Circuit *Black*.

Respondents argue that under the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Petitioner has no due process rights beyond those that Congress has provided. *See* Dkt. No. 6 at 12-15. In *Thuraissigiam*, the Supreme Court rejected a habeas petitioner's argument that the due process clause conferred rights to challenge his expedited removal beyond those established by Congress, stating that "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Thuraissigiam*, 591 U.S. at 107 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). The petitioner had "attempted to enter the country illegally and was apprehended just 25 yards from the border." *Id.* The Supreme Court determined that "'the political department of the government'" had "plenary authority" to admit or exclude aliens seeking initial entry, and thus "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." *Id.* at 139-40. Respondents argue that because Petitioner is likewise an "arriving alien," due process affords him nothing beyond the mandatory detention scheme established by Section 1225(b)(1). Dkt. No. 6 at 12-15.

In the wake of *Thuraissigiam*, there has been significant disagreement regarding whether prolonged detention under § 1225(b)(1)(B)(ii) can, at some point, become unconstitutional. According to the Southern District of California, "most courts" have ruled that prolonged mandatory detention pending removal proceedings, without a bond hearing, will violate due process at some point. *See Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (collecting cases). In following these holdings, the Southern District of California also stated its agreement with "those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*." *Id.* (emphasis in original) (collecting cases). This Court agrees with that reasoning.

*See Patin v. Trump*, No. 2:26-CV-71, 2026 WL 783664, *3 n.2 (D. Vt. Mar. 17, 2026) ("*Thuraissigiam*'s holding is not that arriving noncitizens have no due process rights beyond what Congress provides but that they have only those rights regarding admission that Congress has provided by statute . . . .  In other words, the due process right at issue in *Thuraissigiam* was the right to be admitted to the United States, not the right to be free from arbitrary detention") (quoting *Mata Velasquez v. Kurzdorfer*, 795 F. Supp. 3d 128, 147 (W.D.N.Y. 2025)) (internal citation, quotation marks, and emphasis omitted).

The Southern District of New York also found that "the vast majority of courts to address whether individuals detained under § 1225(b) have a right to a bond hearing have held that they do."  *Al-Thuraya v. Warden, Orange Cnty. Corr. Facility*, 809 F. Supp. 3d 135, 143 (S.D.N.Y. 2025) (collecting cases).  Indeed, district courts in this Circuit have ordered a bond hearing, even after finding § 1225(b)(1)(B)(ii) mandatory detention was applicable.  *See, e.g.*, *Rashid*, 807 F. Supp. 3d at 363-66 (finding unreasonably prolonged detention under § 1225(b) violates due process); *Al-Thuraya*, 809 F. Supp. 3d at 143-44 (same).[4]

However, there is an appreciable body of case law that holds due process does not require arriving aliens detained pursuant to § 1225(b)(1) to receive a bond hearing.  *See Doe v. Bondi*, No. 1:25-CV-02712, 2025 WL 3516292, *4 (D. Colo. Nov. 4, 2025) ("Inadmissible arriving aliens like the petitioner do not have a cognizable liberty interest in being released on parole as a matter of procedural due process") (collecting cases); *Rodriguez Figueroa v. Garland*, 535 F.

---

[4] Although the petitioners in *Rashid* and *Al-Thuraya* had been paroled in the United States and re-apprehended, district courts across the country have still found unreasonably long §1225(b) detention periods may violate due process, even when a petitioner, like Petitioner here, was apprehended shortly after arrival and was never released on parole  *See, e.g.*, *Sadeqi*, 809 F. Supp. 3d at 1093; *Madi v. Andrews*, No. 1:26-CV-01095, 2026 WL 807543, *1, *3-4 (E.D. Cal. Mar. 24, 2026), *R&R adopted*, 2026 WL 927653 (E.D. Cal. Apr. 6, 2026).

Supp. 3d 122, 127 (W.D.N.Y. 2021) ("Petitioner, who is detained pursuant to 8 U.S.C. § 1225(b) and who was apprehended shortly after unlawfully crossing the border, is not entitled to an individualized bond hearing"); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 669 (S.D. Tex. 2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is sufficient due process") (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) ("[T]his Court is constrained to find that Petitioner does not have a constitutional right to any additional procedure.  Accordingly, the Court cannot order Respondents to provide him with a bond hearing, nor can it order his release"); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 333 (W.D.N.Y. 2021) (finding that the petitioner, who was detained pursuant to § 1225(b), was not constitutionally required to receive a bond hearing based on the Supreme Court's decision in *Thuraissigiam*).

And, before *Thuraissigiam*, at least one decision from a district court in this Circuit rejected an argument similar to the one raised by Petitioner here.  In *Thevarajah v. McElroy*, the petitioner sought habeas relief after being detained under similar circumstances: he was apprehended upon arrival to the United States, found inadmissible by Immigration and Naturalization Services officials, expedited removal proceedings were commenced, a notice to appear was issued after the petitioner demonstrated a credible fear of persecution, an immigration judge found him removable, the petitioner appealed, the BIA denied the appeal (after a remand and other related motion practice), and the petitioner then filed a petition for review of the BIA's decision with the Court of Appeals for the Second Circuit.  *See Thevarajah v. McElroy*, No. 01-CV-3009, 2002 WL 923914, *1-2 (E.D.N.Y. Apr. 30, 2002).  After finding the petitioner's detention was mandatory pursuant to § 1225(b)(1)(B)(ii), the Eastern District of New York rejected his argument that the detention was unconstitutional because, *inter alia*, "[the] petitioner

11

has been in custody this long primarily because he has exercised his right to litigate his case to the fullest." *Id.* at *5.

In two recent cases, the Southern District of New York refused to extend the Second Circuit's holding in *Black* to petitioners detained under § 1225(b)(2)(A). *See Palma*, 2026 WL 697015, at *13 ("In sum, *Black* presented a different case with different governmental and private interests at stake. *Mezei* and the Supreme Court's entry distinction precedents therefore foreclose Flores's due process challenge. Although Flores is entitled to some minimal amount of due process, the Government's interest in forgoing a bond hearing trumps his interest in receiving one"); *Acosta v. Arteta*, No. 1:25-CV-9916, 2026 WL 263470, *4 (S.D.N.Y. Feb. 2, 2026) ("The Second Circuit's decision in *Black v. Decker*, which involved 'two legal permanent residents' who were detained 'under the authority of [§] 1226(c),' does not apply to Petitioner, who illegally entered the country and has never had lawful status") (quoting *Black*, 103 F.4th at 137). "Section 1225(b)(2)(A) provides for mandatory detention of any alien . . . who illegally entered the United States, has never been lawfully admitted, and, immigration officials have determined, is not entitled to be admitted." *Id.* at *5 (collecting cases) (footnote omitted). "[U]nlike their counterparts covered by [§] 1225(b)(1), noncitizens within [§] 1225(b)(2)'s ambit are entitled to full removal proceedings; but as with [§] 1225(b)(1), those noncitizens are subject to mandatory detention pending removal." *Chen v. Almodovar*, No. 25-CV-9670, 2026 WL 100761, *2 (S.D.N.Y. Jan. 14, 2026).

Although *Palma* and *Acosta* are instructive as to § 1225(b)(2)(A), the post-*Black* and post-*Thuraissigiam* cases within this Circuit that directly address § 1225(b)(1)(B)(ii) are *Rashid* and *Al-Thuraya*. And, as explained, in both *Rashid* and *Al-Thuraya* the district courts held that individuals detained under § 1225(b) have a constitutional right to a bond hearing. Guided by

*Black*, *Rashid*, *Al-Thuraya*, and the majority view of district courts who have recently analyzed detention pursuant to § 1225(b)(1)(B)(ii) under the Fifth Amendment, this Court finds that, at some point, prolonged detention under § 1225(b)(1)(B)(ii) without a bond hearing may violate due process.[5]  Thus, the Court will analyze whether Petitioner's detention does so violate due process.

**C.      Merits of the Habeas Corpus Petition**

As the District of Vermont summarized, the purported statutory mandate for detention without a bond hearing in § 1225(b)(1)(B)(ii) is still subject to the Supreme Court's procedural due process framework set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Rashid*, 807 F. Supp. 3d at 367 ("It is . . . highly likely that the Second Circuit will apply the *Mathews* framework when it has the opportunity to consider prolonged detention under 1225(b).  The court will apply *Mathews* here").[6]

---

[5]  This conclusion is also consistent with the undersigned's recent decision in *Martins v. Akshar*, No. 9:26-CV-95, Dkt. No. 16 (Feb. 3, 2026).  Indeed, the following facts underly both *Martins* and the present matter: the petitioners (1) raised a due process challenge to their prolonged detention; (2) had entered the United States without valid entry documents; (3) were initially processed for expedited removal but were put in regular removal proceedings based on positive credible fear interviews and asylum applications; (4) had their asylum applications denied by the immigration court; and (5) were appealing that determination to the BIA.  The only notable factual difference between *Martin* and the present matter it that, in *Martin*, the petitioner was paroled into the United States for a time before being re-detained, whereas here, Petitioner has been detained since he encountered Customs and Border Patrol near the border after entering without inspection.  *Compare*, Dkt. No. 1 at ¶ 5, *with Martins v. Akshar*, No. 9:26-CV-95, Dkt. No. 16 at 3-4 (Feb. 3, 2026).  As noted, district courts have evaluated the reasonableness of the length of § 1225(b) detentions without regard to whether the petitioner was previously paroled and re-detained.  *See Rashid*, 807 F. Supp. 3d at 363-66; *Madi*, 2026 WL 807543, at *1, *3-4.

[6]  The Court acknowledges that *Thuraissigiam* is more recent than *Mathews* by several decades.  However, as Petitioner points out, *Thuraissigiam* is distinguishable because the undocumented individual had been definitively denied entry into the United States and was seeking vacatur of his removal order.  *See* Dkt. No. 7 at 6-7.  Here, Petitioner was initially found to have a credible fear of persecution and challenges only whether the length of his detention violates due process in the absence of a bond hearing while his appeal before the BIA remains pending.  *See id.*

> In *Mathews*, the Supreme Court identified three factors that bear on the constitutional need for procedural protections: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* (quoting *Mathews*, 424 U.S. at 335). Accordingly, the Court applies the *Mathews* test to determine Petitioner's due process remedy, if any.

### 1. Factor One: Petitioner's Private Interests

"[T]he private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Id.* (quoting *Velasco Lopez*, 978 F.3d at 851); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Court is cognizant of the possibility that "[i]n the case of an appeal, . . . detention may stretch on indefinitely[,]" and as a result, "the risk of an erroneous deprivation of liberty may become more egregious . . . ." *Rashid*, 807 F. Supp. 3d at 365.

In evaluating the constitutionality of prolonged detention, the Second Circuit has looked to factors such as the actual or likely length of detention, "whether the government or the petitioner is primarily responsible for the delay[,]" whether the petitioner has a viable "defense to removal[,]" and whether the petitioner's conditions of confinement "are meaningfully different from the conditions experienced by those serving a criminal sentence . . . ." *Id.* at 367 (citing

---

Additionally, numerous cases from the past year have used the *Mathews* analysis to determine the due process rights of immigration detainees. *See, e.g.*, *Al-Thuraya*, 809 F. Supp. 3d at 140 ("In determining whether a bond hearing is warranted, *Black* instructed district courts to evaluate the factors set forth in *Mathews v. Eldridge* . . .").

*Black*, 103 F.4th at 146).  Courts also consider the nature of any crimes that the petitioner has committed.  *Black*, 103 F.4th at 146.

Petitioner has been detained for approximately nineteen months.  With his asylum appeal pending with the BIA, it is unknown how long he may remain subject to detention.  The length of Petitioner's detention weighs in favor of a due process remedy.  *See Rashid*, 807 F. Supp. 3d at 368 ("[W]hile mandatory detention without a bond hearing may be constitutional at the outset, the Second Circuit has held that, as the period of confinement increases, 'so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention.' . . .  [T]here is no set point at which detention without a bond hearing becomes unconstitutional.  But courts in this circuit have generally found that detention lasting for more than a year—and in many cases less than a year—may require a bond hearing at which the Government bears the burden of proof")  (quoting *Velasco Lopez*, 978 F.3d at 853 and then collecting cases) (internal citation omitted).

However, here, unlike in *Rashid*, it is Petitioner who has appealed to the BIA, not the Government.  *See id.* ("Here, Mr. Rashid prevailed in his asylum proceedings before the immigration court, and the Government appealed the case to the BIA.  Although the parties completed their briefing in July 2025 . . . , the BIA can take months—or longer—to issue a decision on appeal") (citations omitted).  Thus, the fact that Petitioner was ordered removed by an immigration judge weighs against his private interests affected by the official action of detainment pending appeal.

Additionally, Petitioner entered this country without proper documentation, and he has not proffered any argument or evidence regarding whether his conditions of confinement are meaningfully different from those of criminal detainees at Broome County Correctional Facility.

15

Despite his admittedly unlawful entry, however, there is nothing in the record that indicates Petitioner has any criminal history.

Therefore, the Court finds that this factor is neutral, if not weighing slightly against a due process remedy for Petitioner.

### 2. Factor Two: Risk of Erroneous Deprivation

As for the second factor, courts have recognized that "detention in the immigration context 'has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community.'" *Rashid*, 807 F. Supp. 3d at 369 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). A district court in this circuit has reasoned that continuous mandatory detention without a bond hearing does not violate due process as long as removal proceedings are progressing in some capacity and the delay is not unreasonable or unjustified. *See Ramos Funes v. Searls*, No. 19-CV-6332, 2020 WL 1956346, *18 (W.D.N.Y. Apr. 23, 2020). In *Martins*, this Court joined the District of Vermont in respectfully disagreeing with that conclusion. *See Martins v. Akshar*, No. 9:26-CV-95, Dkt. No. 16 at 14 (Feb. 3, 2026). This Court noted that "[i]f the detention is erroneous, the seriousness of the deprivation increases with its duration." *Id.* (citing *Rashid*, 807 F. Supp. 3d at 369).

Here, as in *Martins*, the record does not indicate that Petitioner poses any safety risk to the public. Aside from his status as an immigrant who entered the United States unlawfully, he has no criminal history. However, there are significant factual distinctions between the present matter and the facts underlying *Martins* and *Rashid*. In *Martins*, the petitioner had lived in the United States without incident for nearly five years. *See id.* at 15. And, in *Rashid* the petitioner prevailed in his asylum proceedings before the immigration court, so the District of Vermont reasoned that "in the absence of a legal error by the immigration judge, it is likely he will

ultimately be allowed to remain in the United States, build a life here, and eventually become eligible for citizenship." *Rashid*, 807 F. Supp. 3d at 370. As already discussed, here, Petitioner has never lived in the United States and the immigration court denied his asylum claim and ordered him removed. *See* Dkt. No. 1 at ¶¶ 1-4. These factual distinctions weigh heavily against Petitioner. *C.f. Anazco v. Baltazar*, No. 26-CV-1133, 2026 WL 1004485, *3 (D. Colo. Apr. 14, 2026) ("Petitioner's removal continues to be litigated due to petitioner's appeal of his removal order that is pending before the BIA . . . . However, effectuation of a removal order being prolonged by petitioner's appeal does not mean his detention is not significantly likely as contemplated under *Zadvydas*") (citations omitted).[7]

On the other hand, even though Petitioner's child is located in Iran, Dkt. No. 6 at 15-16, the record does not suggest, nor do Respondents argue, that Petitioner poses a flight risk or is a danger to the public.

Nevertheless, the second *Mathews* factor requires the Court to evaluate "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. As the Southern

---

[7] In *Anazco*, the District of Colorado did not engage in a *Mathews* analysis because the petitioner did not request a bond hearing or argue how his due process rights were violated under *Mathews*. *See Anazco*, 2026 WL 1004485, at *2. Nevertheless, the Court applies the same reasoning as the court in *Anazco*, to the extent Petitioner contends that the prolonged nature of his detention and the lack of a reasonable probability of his removal means that his due process rights have been violated under *Zadvydas v. Davis*, 533 U.S. 678 (2001). It is unclear whether Petitioner seeks release under *Zadvydas*, but Petitioner does request "immediate release from custody, or, in the alternative, order a bond hearing before an immigration judge[.]" Dkt. No. 1 at 9. Regardless, the Petition would be denied to the extent Petitioner invoked *Zadvydas* as a basis for release at this time. *See Al-Thuraya*, 809 F. Supp. 3d at 140 ("As for *Zadvydas*, while its due-process teachings are relevant here, it was a statutory-interpretation case dealing with a different statute, 8 U.S.C. § 1231(a)(6). That statute applies to noncitizens who have final removal orders in place, but who cannot be removed . . . . [The petitioner] isn't in that position yet, given that he still is challenging his removal") (citing *Zadvydas*, 533 U.S. at 682) (internal citation omitted).

District of New York has observed, "[u]nder § 1225(b)(1)(B)(ii), there are no 'procedural safeguards' in place to determine whether [the petitioner's] detention has become unreasonable." *Al-Thuraya*, 809 F. Supp. 3d at 144-45. Respondents acknowledge that Petitioner's only option to contest the length of his detention is to seek discretionary parole. *See* Dkt. No. 6 at 11 n.4 (citing 8 U.S.C. § 1182(d)(5)(A)). As such, "*any* additional safeguard against unreasonable detention will be valuable." *Al-Thuraya*, 809 F. Supp. 3d at 145 (citing *Black*, 103 F.4th at 153) (emphasis in original). "The most obvious" procedural safeguard available "would be an individualized bond hearing at which an [immigration judge] can consider the noncitizen's dangerousness and risk of flight." *Black*, 103 F.4th at 153. Accordingly, the second *Mathews* factor weighs in Petitioner's favor.

### 3. Factor Three: Government's Interests

As to the final *Mathews* factor, courts consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (citation omitted). The Court acknowledges that "the Government has a legitimate interest in ensuring that noncitizens appear at their immigration proceedings and in preventing noncitizens from perpetrating harm in their communities during the pendency of their removal proceedings." *Rashid*, 807 F. Supp. 3d at 371.

However, as in *Black*, "the additional procedural safeguards [the court] would allow here under *Mathews* do nothing to undercut those interests." *Black*, 103 F.4th at 153. At a bond hearing before an immigration judge, that judge would assess Petitioner's flight risk and dangerousness on an individualized basis. "And while the government's legitimate interests justify a relatively short-term deprivation of liberty, . . . the balance of interests shifts as the noncitizen's detention is prolonged without any particularized assessment of need." *Id.* at 154

18

(internal citation omitted).  In fact, "[t]o require that the Government justify continued detention 'promotes the Government's interest—one [the Court] believe[s] to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* (quoting *Velasco Lopez*, 978 F.3d at 854).  Petitioner's continued detention without a bond hearing to determine its reasonableness and justification risks wasting public resources.  *See id.* ("[R]etaining and housing detainees imposes substantial costs as well").

As the District of Vermont did in *Rashid*, and the Southern District of New York did in *Al-Thuraya*, this Court concludes that a bond hearing before an immigration judge would not diminish the Government's interests.  *See Rashid*, 807 F. Supp. 3d at 371; *Al-Thuraya*, 809 F. Supp. 3d at 145.

Accordingly, the Court finds that the third factor weighs slightly in favor of a due process remedy for Petitioner.

### 4. Petitioner's Due Process Remedy

Based on the *Mathews* analysis, the Court determines that Petitioner is due a bond hearing before an immigration judge.  This Court is not the first to permit a bond hearing to a petitioner subject to mandatory detention under § 1225(b)(1)(B)(ii).  *See, e.g.*, *Sadeqi*, 809 F. Supp. 3d at 1095; *Rashid*, 807 F. Supp. 3d at 372; *Djelassi*, 434 F. Supp. 3d at 923; *Madi*, 2026 WL 807543, at *5.  The bond hearing will give Respondents the opportunity to show an immigration judge why Petitioner's detention is necessary to achieve the Government's objectives.  "Otherwise, 'the risk of an erroneous deprivation' of [Petitioner's] liberty interest would remain unacceptably high." *Black*, 103 F.4th at 155 (quoting *Mathews*, 424 U.S. at 335).

The Petition is denied, however, to the extent Petitioner requests that this Court grant his immediate release.  *See Rashid* 807 F. Supp. 3d at 371 ("[The petitioner] requests that the court

grant his immediate release.  His interest in his liberty, however, must be weighed against the government's legitimate interests in detaining noncitizens who are a flight risk or who are a danger to the community").

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is **GRANTED in part** and **DENIED in part**;[8] and the Court further

**ORDERS** that Respondents provide Petitioner a bond hearing consistent with this Memorandum-Decision and Order within thirty (30) days; and the Court further

**ORDERS** that at the bond hearing, consistent with the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and the procedures described by the Second Circuit in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), Respondents will have the burden of proving by clear and convincing evidence why Petitioner's detention is warranted; and the Court further

**ORDERS** that this Court's Temporary Restraining Order dated March 16, 2026 (Dkt. No. 2) is **DISSOLVED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Petitioner's favor and close this case; and the Court further

---

[8]  The Petition is denied as to immediate release, but granted as to a bond hearing before an immigration judge.

20

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 24, 2026
      Albany, New York

Mae A. D'Agostino
U.S. District Judge